## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RICHARD SNYDER, | : |
| | : Civ. A. No. 11-0003 (NLH)(AMD) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **OPINION** |
| DIETZ & WATSON, INC., et al., | : |
| | : |
| Defendants. | : |

**APPEARANCES:**

Justin L. Swidler, Esq.
Swartz Swidler, LLC
1878 Marlton Pike East
Suite 10
Cherry Hill, NJ 08003

     *Counsel for Plaintiff*

Alan C. Milstein, Esq.
Jeffrey P. Resnick, Esq.
Sherman, Silverstein, Kohl, Rose & Podolsky, PC
East Gate Corporate Center
308 Harper Drive
Suite 200
Moorestown, NJ 08057

     *Counsel for Defendants*

**<u>HILLMAN, District Judge</u>:**

In this action, Plaintiff, Richard Snyder, contends that his former employer, Defendant Dietz & Watson, and its president and vice president, Defendants Louis and Christopher Eni, wrongfully withheld money from Plaintiff's wages, used such money for their own benefit, and retaliated against Plaintiff by terminating his employment when he complained of the alleged wage violations.

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff failed to follow the grievance procedures available to him under the collective bargaining agreement to which his employment was subject.[1]  Defendants also argue that Plaintiff's claims are preempted under the Labor Management Relations Act ("LMRA") and the National Labor Relations Act ("NLRA"), and that Plaintiff fails to state a claim for violations of the Racketeer Influenced Corrupt Organizations Act ("RICO") and the Fair Labor Standards Act ("FLSA").  For the reasons that follow, Defendants' motion to dismiss the amended complaint will be granted in part and denied in part.

## I.    JURISDICTION

Plaintiff sets forth claims derived from both federal and New Jersey law.  The Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  Further, the Court may exercise supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. §

---

1. Subsequent to Defendants' filing of a motion to dismiss the original complaint, Plaintiff filed an amended complaint. Defendants then filed a motion to dismiss the amended complaint. Accordingly, Defendants' motion to dismiss the original complaint will be dismissed as moot.  Moreover, although Plaintiff filed the amended complaint more than twenty-one days after the filing of the motion to dismiss, Defendants do not object to the filing of the amended complaint on timeliness grounds.  See Fed. R. Civ. P. 15 (party may amend its pleading once as a matter of course within 21 days of service of motion to dismiss or service of answer).

1367.

## II. BACKGROUND

Plaintiff was employed as a driver for Dietz & Watson, and the terms of his employment were governed by a collective bargaining agreement (hereinafter, "CBA") between Dietz & Watson and the Food Driver Salesmen, Dairy & Ice Cream Workers, Local No. 463 Union.  Plaintiff contends that in 2000, when he was first given a permanent driving route, a Dietz & Watson employee, Louisa Bergey, told Plaintiff that a certain amount of money would be deducted from his paycheck to cover any shortages in the money collected from customers.  (See Am. Compl. ¶¶ 12-16.) Plaintiff was purportedly advised that once any shortages were paid to Defendants, the remaining funds, if any, would be returned to Plaintiff.  (Id. at ¶ 17.)  Plaintiff avers that in 2007, he was advised via telephone by Ms. Bergey that she would begin to prospectively deduct $75 per pay period to be placed in an escrow account to cover future shortages that had not yet occurred.  (Id. at ¶ 18.)  Over Plaintiff's objection, $75 per pay period was withheld from Plaintiff's paycheck under a purportedly mandatory policy.  (Id. at ¶¶ 19-21.)

Plaintiff contends that Defendants withheld thousands of dollars per year under this alleged mandatory policy, with assurances that such money was being placed in escrow.  (Id. at ¶ 25.)  Defendants, however, purportedly refused to provide an

accurate accounting of the escrow account and refused to permit Plaintiff to withdraw money from the escrow account. (Id. at ¶ 26.) Plaintiff avers that Defendants never set up an escrow account and kept the wage deductions for their own benefit. (Id. at ¶¶ 27, 35.) Moreover, Plaintiff asserts that when he complained about the wage deductions to his supervisors in 2009, Defendants retaliated against Plaintiff by terminating his employment. (Id. at ¶¶ 36-38.) Plaintiff also asserts that for the final pay period, he was paid only one penny. (Id. at ¶ 42.)

Based on the foregoing allegations, Plaintiff asserts in the amended complaint claims for a purported RICO violation against the individual defendants and the corporate defendant (Counts I and II). Plaintiff also asserts claims for fraud (Count III), unjust enrichment (Count IV), breach of contract (Count V), breach of fiduciary duty (Count VI), conversion (Count VII), violations of the New Jersey Wage Payment Law (Count VIII), violations of the FLSA and the New Jersey Wage and Hour Law (Count IX), and retaliatory discharge (Count X).

In their motion to dismiss the amended complaint, Defendants argue that the claims in this case are based on an alleged violation of the CBA and are federal in nature, notwithstanding Plaintiff's attempt to couch his claims in terms of violations of state law. (See generally, Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s First Am. Compl. (hereinafter, "Defs.' Br.") 1-

4

5.)   Defendants specifically note that Article 9 of the CBA addresses the wage-deduction practice of which Plaintiff complains because this provision states that employees "shall be held responsible for all collections and cash, except from accounts where the Employer has approved credit."   (<u>Id.</u> at 3-4.) Defendants also note that Article 3 of the CBA contains a dispute resolution clause requiring arbitration of all claims.   (<u>Id.</u> at 4.)   Defendants argue that Plaintiff's claims should be dismissed for failure to exhaust administrative remedies.   (<u>Id.</u> at 5.) Defendants also argue that the alleged wrongful conduct comes within the preemptive scope of the NLRA and Section 301 of the LMRA.   (<u>Id.</u>)   Further, Defendants challenge Plaintiff's RICO claim because Plaintiff has purportedly failed to state a claim, and Plaintiff's federal wage claim because Plaintiff purportedly is exempt from the minimum wage requirements of the FLSA.   (<u>Id.</u>)

In opposition, Plaintiff avoids reference to the CBA, instead couching his claims in terms of an alleged unwritten, longstanding policy by which Defendants purportedly deduct money from Plaintiff's and other drivers' wages for alleged shortages. (<u>See</u> Pl.'s Br. in Opp. to Defs.' Mot. to Dismiss (hereinafter, "Pl.'s Opp. Br.") 1.)   Such policy, Plaintiff contends, violates state law, even though Defendants represented that the deductions were both legal and mandatory.   (<u>Id.</u>)

5

## III. DISCUSSION

### A.    Standard of Review

In this case, Defendants invoke Federal Rule of Civil Procedure 12(b)(6) in seeking dismissal of Plaintiff's amended complaint.  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  The Third Circuit has instructed district courts to conduct a two-part analysis in deciding a motion to dismiss.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

First, a district court "must accept all of the complaint's

6

well-pleaded facts as true, but may disregard any legal
conclusions." Fowler, 578 F.3d at 210-11 (citing Iqbal, 129 S.
Ct. at 1949). Second, a district court must "determine whether
the facts alleged in the complaint are sufficient to show that
the plaintiff has a 'plausible claim for relief.'" Id. at 211
(quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more
than allege the plaintiff's entitlement to relief." Id.
"'[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged – but it has not 'show[n]' - 'that the pleader is
entitled to relief.''" Id. (quoting Iqbal, 129 S. Ct. at 1949);
see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d
Cir. 2008) ("The Supreme Court's Twombly formulation of the
pleading standard can be summed up thus: 'stating . . . a claim
requires a complaint with enough factual matter (taken as true)
to suggest' the required element. This 'does not impose a
probability requirement at the pleading stage,' but instead
'simply calls for enough facts to raise a reasonable expectation
that discovery will reveal evidence of' the necessary
element.")(quoting Twombly, 550 U.S. at 556).

A court need not credit "'bald assertions'" or "'legal
conclusions'" in a complaint when deciding a motion to dismiss.
In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429–30
(3d Cir. 1997). The defendant has the burden of demonstrating

that no claim has been presented.  Hedges v. United States, 404
F.3d 744, 750 (3d Cir. 2005)(citing Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must
only consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of public record.
Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998
F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042
(1994).  A court may consider "an undisputedly authentic document
that a defendant attaches as an exhibit to a motion to dismiss if
the plaintiff's claims are based on the document."  Id. (citation
omitted).  If any other matters outside the pleadings are
presented to the court, and the court does not exclude those
matters, a Rule 12(b)(6) motion will be treated as a summary
judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(d).

**B.    Preemption Under Section 301 of the Labor Management
        Relations Act**

Section 301(a) of the LMRA provides for federal jurisdiction
over disputes regarding collective bargaining agreements.  The
statute states, in relevant part, as follows:

> Suits for violation of contracts between an
> employer and a labor organization
> representing employees in an industry
> affecting commerce as defined in this
> chapter, or between any such labor
> organizations, may be brought in any district
> court of the United States having
> jurisdiction of the parties, without respect
> to the amount in controversy or without

8

regard to the citizenship of the parties.

29 U.S.C. § 185(a).

Although the statute expressly addresses only federal jurisdiction, "this provision is not merely jurisdictional, but is also one that calls on the federal courts to create a uniform federal common law of collective bargaining, with the primacy of arbitral resolution of industrial disputes as its centerpiece." Voilas v. Gen. Motors Corp., 170 F.3d 367, 372 (3d Cir. 1999) (citing Textile Workers Union of Am. v. Lincoln Mills, 353 U.S. 448, 455-56 (1957)). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 404 (1988).[2]  As such, § 301 requires "federal courts to fashion a

_____

2.  In Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962), the Supreme Court articulated its rationale as to why the terms in collective bargaining agreements must be determined by federal law.  The Supreme Court stated: "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract.  Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation . . . [and] might substantially impede the parties' willingness to

body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985).

Because § 301 requires the creation of uniform federal labor law to ensure uniform interpretation of collective bargaining agreements, and because state laws might produce differing interpretations of the obligations imposed by such agreements, the Supreme Court has held that "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." Id. at 210 (citing Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962)).  Thus, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted" by federal labor law.  Lingle, 486 U.S. at 406.

The preemptive effect of § 301 extends beyond suits alleging contract violations, as tort actions are also preempted under § 301 if the resolution of the state law claim depends upon the meaning of a phrase or term in a collective bargaining agreement. Allis-Chalmers, 471 U.S. at 211.  In this regard, the Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an

───────────────

agree to contract terms providing for final arbitral or judicial resolution of disputes." Lucas Flour, 369 U.S. at 103-04.

agreement made between the parties in a labor contract," the claim is preempted by § 301 and must be decided pursuant to federal labor contract law.  Id. at 220.

For example, in Allis-Chalmers, the plaintiff brought a state-law tort claim against his employer for the alleged bad-faith handling of an insurance claim.  Id. at 206.  The Supreme Court considered whether the Wisconsin tort remedy for bad-faith handling of an insurance claim could be applied when the insurance policy was incorporated by reference in the collective bargaining agreement between the plaintiff's union and his employer.  Id. at 204, 214.  After examining the collective bargaining agreement, the Supreme Court noted that there was a question as to whether the labor contract provided for the right to have disability payments made in a timely manner.  Id. at 215. The Supreme Court determined that the plaintiff's claim was completely preempted by § 301 because "[t]he duties imposed and rights established through the state tort . . . derive from the rights and obligations established by the [collective bargaining agreement]," and resolution of the suit would thus involve interpretation of the contract.  Allis-Chalmers, 471 U.S. at 217.

In extending the preemptive effect of § 301 to tort actions, the Supreme Court noted that the same interest in maintaining interpretive uniformity and predictability that requires contract disputes to be resolved through federal law similarly requires

that the meaning given to a contract phrase or term be subject to uniform federal interpretation when such interpretation is necessary to resolve a tort claim. Id. "Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. "Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." Id.

The existence of a CBA does not, in itself, prevent an individual from asserting state-law claims based on an agreement or obligations independent of the CBA. In Caterpillar Inc. v. Williams, 482 U.S. 386, 388 (1987), employees of Caterpillar, Inc. filed suit in state court alleging a state-law breach of contract claim with respect to individual employment contracts. The plaintiffs had been hired for positions covered by a collective bargaining agreement, but they later assumed other positions no longer covered by the agreement. Id. When the plaintiffs were promoted, Caterpillar had allegedly made statements guaranteeing the plaintiffs' employment, but subsequently laid off the plaintiffs. Id. at 389. The plaintiffs sued, claiming breach of the individual employment

12

contracts.  Id. at 390.  The Supreme Court held that although the plaintiffs could have asserted a breach of the collective bargaining agreement, they chose to claim a breach of the individual employment contracts and, as such, the claims did not arise under federal law.  Id. at 394-95.  The Third Circuit has interpreted Caterpillar as standing for the proposition that "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining contract." Voilas, 170 F.3d at 373-74.[3]

Thus, state-law rules that establish rights or obligations independent of a labor contract are not preempted under § 301. Allis-Chalmers, 471 U.S. at 212-13.  State-law claims are independent of a labor contract if they can be resolved without interpreting the contract itself, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts[.]"  Lingle, 486 U.S. at 409-10.  "[T]he

---

3.  Moreover, not all cases that touch upon a collective bargaining agreement are preempted under § 301.  The Supreme Court has held that the application of state law is preempted by § 301 "only if such application requires the interpretation of a collective-bargaining agreement."  Lingle, 486 at 413; see also Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished[.]").

mere fact that a broad contractual protection . . . may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the [collective bargaining agreement]."  Id. at 412-13.  The question in a preemption analysis is not whether the source of a cause of action is state-law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement.

    With these principles in mind, the Court now turns to the pending motion to dismiss to determine whether Plaintiff's claims are preempted and subject to dismissal.

### 1.  The Arbitration Clause in the CBA Does Not Require Arbitration of All Claims

    Defendants first argue that all of the claims contained in the amended complaint are subject to arbitration because the CBA provides that "[e]very effort shall be made to adjust amicably between the Company and the Union all grievances, complaints, differences and disputes" and that any dispute that cannot be resolved may be submitted to arbitration.  (Defs.' Br. 4.)  Plaintiff responds that the arbitration provision cannot be so broadly construed as to mandate arbitration of all statutory and common law claims.  (Pl.'s Opp. Br. 4.)  Plaintiff asserts that to effect such a broad waiver, a CBA must clearly and unmistakably state that employees have waived their right to a federal forum for statutory and common law claims.  (Id.)

14

A general arbitration provision in a collective bargaining agreement does not, in itself, require arbitration of all claims an employee may have against an employer.  Defendants' reliance on Vaca v. Sipes, 386 U.S. 171, 184 (1967), to support the argument that all claims must be grieved is misplaced.  See Vaca, 386 U.S. at 184 (employee asserting breach of provision of collective bargaining agreement must first follow grievance procedures in agreement).  It is true that an employee must attempt to exhaust the grievance procedures before bringing an action to enforce rights derived from the CBA, but Vaca does not stand for the proposition that the grievance procedure must be followed to vindicate rights that exist independently of the CBA.  Indeed, if every employee whose employment is subject to a CBA must grieve every claim – even claims that exist independently of the rights conferred by the CBA – before resorting to the courts, the extensive case law concerning Section 301 discussed above would not exist, for every claim would be subject to the grievance and arbitration procedures set forth in a CBA regardless of whether they require interpretation of the contract.

In Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 72 (1998), the Supreme Court considered whether a general arbitration clause in a collective bargaining agreement required an employee to use the arbitration procedure for an alleged

violation of the Americans With Disabilities Act ("ADA").  The
cause of action in that case arose out of the ADA, not out of
contract, and was distinct from the rights conferred by the CBA.
Id. at 79.  The dispute involved only the meaning of a federal
statute and did not concern the application or interpretation of
the CBA.  Id.  While noting that there is a presumption of
arbitrability of disputes under Section 301 of the LMRA, the
Supreme Court concluded that such presumption applies only where
a claim requires interpretation or application of the terms of a
CBA.  Id. at 78.

        An employee's claims that are based on statutory rights, and
are thus independent of the rights created by a CBA, may only be
subject to arbitration where the CBA contains a "clear and
unmistakable" waiver of a judicial forum for such rights.  Id. at
80; see also 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 129 S. Ct.
1456, 1474 (2009) ("We hold that a collective-bargaining
agreement that clearly and unmistakably requires union members to
arbitrate [Age Discrimination in Employment Act] claims is
enforceable as a matter of federal law.").  A collective
bargaining agreement containing only a general provision to
submit all claims to arbitration cannot preclude a lawsuit
concerning an employee's individual statutory rights.  See
Wright, 525 U.S. at 80.

        In this case, as noted above, the arbitration provision

16

states only that "all grievances, complaints, differences and disputes" may be submitted to arbitration.  (Defs.' Br., Ex. B (CBA) Art. 3.)  The CBA does not expressly specify that all disputes, including those arising independently of the CBA, are subject to arbitration, nor does the CBA name or incorporate any federal or state statutes into the arbitration clause.  As such, the provisions of the CBA are too broad and general to demonstrate the requisite "clear and unmistakable" intent to submit to arbitration even those claims unrelated to the CBA.

### 2.   Plaintiff's Breach of Contract Claim

Plaintiff asserts in Count V a claim for breach of contract against Defendant Dietz & Watson.  To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages arising from the breach of contract; and (4) that the party asserting a breach of contract claim performed its contractual obligations.  Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

Plaintiff alleges in the amended complaint that Defendant Dietz & Watson "contracted with Plaintiff to compensate him a set amount of wages for his work" (Am. Compl. ¶ 80), but Plaintiff neither identified the contract allegedly breached nor attached to the complaint a copy of the contract at issue.  Defendants argue, and Plaintiff does not dispute, that the contract at issue is the CBA.  Article 15 of the CBA contains a provision for wages

to be paid to driver salesmen,[4] which provision refers to a
separate schedule attached to the contract.  The schedule
provides that "[d]river salesmen will receive . . . [b]ase pay of
one hundred and ten dollars $110.00 per week" plus commissions.
(Defs.' Br., Ex. B (CBA) Schedule A.)  As the CBA expressly
addresses wages, and Plaintiff fails to identify a separate
contract concerning wages that is the subject of the breach of
contract claim in this case, the Court concludes that the breach
of contract claim is predicated on an alleged breach of the CBA.

Because the breach of contract claim alleges a violation of
a provision in the CBA, the claim must be brought under § 301.
Allis-Chalmers, 471 U.S. at 210.  Prior to bringing suit,
however, an employee seeking to vindicate personal rights under a
collective bargaining agreement must first attempt to exhaust any
mandatory or exclusive grievance procedures provided in the
agreement.  United Paperworkers Int'l Union, AFL-CIO v. Misco,
Inc., 484 U.S. 29, 37 (1987) ("The courts have jurisdiction to
enforce collective-bargaining contracts; but where the contract
provides grievance and arbitration procedures, those procedures
must first be exhausted and courts must order resort to the
private settlement mechanisms without dealing with the merits of
the dispute."); Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1537

---

4.  Plaintiff alleges that he worked as a driver for Defendant
Dietz & Watson.  (Am. Compl. ¶ 11.)

(3d Cir. 1992) ("Under federal labor law, aggrieved employees must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'").

As noted supra, the CBA in this case establishes a mandatory grievance procedure that must be followed by employees asserting a violation of the terms of the contract.  Federal labor law requires that such procedure, including arbitration, be exhausted before an employee grievance concerning the terms of the CBA may be heard in federal court.  The amended complaint here is devoid of any allegations concerning Plaintiff's attempts to grieve the breach of contract claim.  Plaintiff concedes that he must exhaust the CBA's grievance procedure before bringing an action for breach of the CBA.  (Pl.'s Opp. Br. 3-4.)  Plaintiff's failure to allege or otherwise demonstrate that he exhausted the grievance procedures mandated in the CBA precludes judicial relief for breach of the CBA.[5]  Accordingly, Count V is dismissed without prejudice.

---

5.  While an employee may in some instances bring an action for breach of the collective bargaining agreement by showing that the union failed to pursue a grievance, see Angst, 969 F.2d at 1538, Plaintiff here does not allege an attempt to invoke the grievance procedure and thus has no excuse for failing to grieve claims under the CBA.

### 3. Plaintiff's Claims for Fraud, Unjust Enrichment, Breach of Fiduciary Duty, and Conversion

In the amended complaint, Plaintiff asserts claims for fraud (Count III), unjust enrichment (Count IV), breach of fiduciary duty (Count VI), and conversion (Count VII). These counts are all predicated on the premise that Defendants had no right to withhold Plaintiff's wages. (<u>See</u> Am. Compl. ¶¶ 52, 54, 72, 76-77, 84-85, 90.) Defendants contend that Plaintiff's state-law claims are preempted because they concern Dietz & Watson's wage deduction practices, which are purportedly authorized by the provisions of the CBA. (Defs.' Br. 12.) Plaintiff argues that these claims are not preempted because they are based on independent state-law rights and will not require interpretation of the CBA. (Pl.'s Opp. Br. 12.)

#### a. Plaintiff's Claim for Fraud

To establish a <u>prima facie</u> case for fraud under New Jersey law, Plaintiff must be able to show: (1) that Defendants made a material misrepresentation of a presently existing or past fact, (2) which they knew or believed to be false, (3) upon which they intended Plaintiff to rely, (4) and upon which Plaintiff reasonably did rely, (5) with resulting damages. <u>Atlantic City Assoc. LLC v. Carter & Burgess Consultants, Inc.</u>, No. Civ. A. 05-3227, 05-5623, 06-3735, 2007 WL 2892680, at *2 (D.N.J. Sept. 28, 2007) (citing <u>In re Resorts Intern., Inc.</u>, 181 F.3d 505, 509 (3d Cir. 1999)).

Plaintiff's fraud claim is based on Defendants' alleged false representations that Plaintiff was responsible for covering shortages and that his wages would be deducted for this purpose. (See, e.g., Am. Compl. ¶¶ 14, 52, 72.)  The Court finds that resolution of this claim depends upon an interpretation of the CBA.  Defendants base their right to withhold wages on Article 9 of the CBA, which provides that "[t]he employee shall be held responsible for all collections and cash, except from accounts where the Employer has approved credit."  (Defs.' Br., Ex. B (CBA) Art. 9.)  This provision is subject to differing interpretations.  On one hand, Article 9 may be interpreted as simply setting forth one of a driver's duties, i.e., a driver is responsible for collecting cash from customers.  Alternatively, this provision may be interpreted as imposing on a driver accountability for the monies owed to Dietz & Watson, i.e., a driver is responsible for the collections and cash obtained from customers and must pay any shortages to Dietz & Watson.[6]

If Article 9 of the CBA is afforded the latter interpretation, that is, that Plaintiff may be held accountable

---

6.  As noted by Plaintiff, the CBA does not expressly state that money will be deducted from an employee's paychecks to pay for shortages.  (Pl.'s Opp. Br. 8 n.1.)  If the CBA provides that employees are accountable for shortages, as argued by Defendants, but the CBA does not set forth the manner in which an employer is to recoup such funds, an arbitrator must interpret the silence of the contract to determine whether the contract permitted Defendants to withhold Plaintiff's salary as a means of holding drivers responsible for shortages.

for shortages, then Plaintiff's fraud claim would fail because
Defendants would not have made a false representation as to the
purpose of the wage deductions.  In other words, if Plaintiff was
responsible for shortages under the CBA and Defendants told
Plaintiff that they were withholding wages to cover shortages,
then there was no misrepresentation concerning the wage
deductions.[7]  By contrast, if Article 9 is interpreted only to
provide that a driver's duty is to collect cash but does not
impose on the driver accountability for the receivables, yet
Defendants withheld money under the purported guise that
Plaintiff was responsible for shortages, then Defendants would
have been making misrepresentations to Plaintiff about the wage
deductions.

Therefore, the fraud claim cannot be resolved without an
interpretation of Article 9 of the CBA.  Accordingly, the Court
finds that the fraud claim must be interpreted pursuant to
federal law and is thus preempted by § 301.  <u>Allis-Chalmers</u>, 471
U.S. at 217 ("The duties imposed and rights established through

---

7.  The Court notes Plaintiff's argument that withholding wages
for the purpose of covering shortages is illegal under New Jersey
law, and the Court addresses this argument <u>infra</u>.  However,
whether Defendants intentionally lied about their right to
withhold wages is different from whether Defendants believed in
good faith that they were entitled to withhold wages.  If the CBA
authorized wage deductions and Defendants represented that they
withheld money pursuant to the CBA, then they would not have made
a material misrepresentation, even if the relevant provision in
the CBA is ultimately deemed to violate New Jersey law.

the state tort . . . derive from the rights and obligations established by the contract. . . . That being so, this tort claim is firmly rooted in the expectations of the parties that must be evaluated by federal contract law.").

As a claim under § 301, Plaintiff must have exhausted the grievance procedure set forth in the collective-bargaining agreement.  Plaintiff's failure to allege that he followed the grievance procedure warrants dismissal of the fraud claim, without prejudice.

### b.   Plaintiff's Claim for Unjust Enrichment

In Count IV, Plaintiff asserts a claim for unjust enrichment.  Plaintiff avers that Defendants were unjustly enriched by deducting money from Plaintiff's wages and keeping the money for their own benefit.  (Am. Compl. ¶¶ 75-77.)

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (N.J. 1994) (citations omitted). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. (citations omitted).

Whether Plaintiff had an expectation of full payment of

23

wages in this case will require interpretation of the CBA.  In determining whether Plaintiff should have expected full payment of wages without deductions, a trier of fact must interpret the CBA to decide whether Article 9 provides that Plaintiff is accountable for shortages.  In this regard, if Plaintiff was informed through the CBA that he would be held accountable for shortages, then a trier of fact may conclude that Plaintiff should not have expected full remuneration for the hours he worked.  Similarly, the CBA would have to be consulted to determine whether Defendants were enriched beyond their contractual right, for if they were permitted pursuant to the CBA to hold Plaintiff accountable for shortages then the wages that they withheld may not have enriched Defendants beyond their contractual right.

Because resolution of the unjust enrichment claim will require the interpretation of the terms of the CBA, and there is no indication that Plaintiff attempted to grieve this claim, the Court finds that Plaintiff's unjust enrichment claim is preempted by § 301 and is subject to dismissal without prejudice.

### c.   Plaintiff's Conversion Claim

Count VII of Plaintiff's amended complaint alleges that Defendants failed to pay money owed to Plaintiff, and instead intentionally converted that money for their own use.

Conversion is defined as "the wrongful exercise of dominion

24

and control over property owned by another inconsistent with the owners' rights." <u>Sun Coast Merch. Corp. v. Myron Corp.</u>, 393 N.J. Super. 55, 84 (N.J. Super. Ct. App. Div. 2007), <u>certif. denied</u>, 194 N.J. 270 (N.J. 2008) (citation omitted).  As previously discussed, Plaintiff's conversion claim arises from the allegation that Defendants wrongfully withheld Plaintiff's money by deducting from Plaintiff's wages to cover shortages.  Whether Defendants had a right to Plaintiff's money turns on whether Article 9 of the CBA is interpreted to hold Plaintiff accountable for shortages.  As such, Plaintiff's conversion claim is preempted under Section 301.[8]

### d.  Plaintiff's Breach of Fiduciary Duty Claim

Plaintiff asserts in Count VI a claim for breach of fiduciary duty.  This claim is predicated on Plaintiff's allegation that Defendants owed Plaintiff a fiduciary duty to provide wages without unlawful deductions, and a fiduciary duty to hold money in escrow without taking monies for themselves. (Am. Compl. ¶¶ 84, 86.)

With respect to Plaintiff's first theory, <u>i.e.</u>, that

---

8.  This claim is subject to dismissal with prejudice under <u>Fed. R. Civ. P.</u> 12(b)(6) because Plaintiff cannot assert a conversion claim based on a failure to pay contractually agreed-upon wages. "The failure of a party to a contract to pay the full contract price is simply a breach of the contract and thus does not constitute a conversion of the property of the other party to the contract." <u>Winslow v. Corporate Express, Inc.</u>, 364 N.J. Super. 128, 143 (N.J. Super. Ct. App. Div. 2003) (citing W. Page, et al., Prosser & Keeton on Torts § 1 (5th ed. 1984)).

Defendants had a fiduciary duty to pay wages, Plaintiff cites no authority to support this contention.  The Court is aware of no case that generally imposes on an employer a fiduciary duty to its employees.  As such, this claim is without merit and is subject to dismissal with prejudice under Fed. R. Civ. P. 12(b)(6).

Plaintiff's second theory is that Defendants as escrow agents owed Plaintiff a fiduciary duty to hold Plaintiff's money for Plaintiff's benefit, and that Defendants breached such duty by keeping the funds for their own benefit.  Escrow agents have a fiduciary responsibility to the parties to an escrow transaction. Matter of Hollendonner, 102 N.J. 21, 26 (N.J. 1985) ("It is well settled that an escrow holder acts as an agent for both parties" and escrowee owes a fiduciary duty to all parties).  However, the Court finds that resolution of Plaintiff's breach of fiduciary duty claim, like the conversion claim addressed supra, will require interpretation of the CBA in determining whether Plaintiff was responsible for paying for shortages.  If Plaintiff was accountable for shortages and the money held in escrow was used to cover shortages, then Defendants would have had a contractual right to the money and would not have breached a fiduciary duty by keeping such funds.  Because Plaintiff does not assert that he attempted to grieve this claim, Count VI is dismissed without prejudice insofar as Plaintiff alleges that

Defendants as escrow agents breached a fiduciary duty.

### 4.  Plaintiff's New Jersey Wage Payment Law Claim

In Count VIII, Plaintiff asserts a violation of the New Jersey Wage Payment Law ("NJWPL") on the basis that Defendants' deduction of wages for shortages is not one of the itemized deductions permitted under New Jersey law.  (Am. Compl. ¶¶ 94-97.)  Plaintiff also avers that Defendants paid Plaintiff only one penny for all of his accrued and sick vacation time at the time of his termination, when he was purportedly owed significantly more money.  (Id. at ¶¶ 98-99.)

N.J. Stat. Ann. § 34:11-4.4 provides that an employer may not "withhold or divert any portion of an employee's wages unless" the employer is "required or empowered to do so by New Jersey or United States law," or unless the amounts withheld or diverted are for specific, itemized reasons set forth in the statute.  Plaintiff contends that this statute creates state rights that are independent of the CBA, and that he can establish liability under the statute without any analysis of the terms of the CBA.  (Pl.'s Opp. Br. 9.)

The Court finds that resolution of Plaintiff's NJWPL claim will not require interpretation of the CBA.  In determining whether Defendants violated the NJWPL, a trier of fact will decide (1) whether Defendants withheld wages from Plaintiff; (2) the purpose for withholding such wages; and (3) whether the

27

purpose for withholding wages is one of the itemized reasons set forth in the NJWPL.  The CBA need not be consulted to resolve any of these elements.

The Court recognizes Defendants' argument that wages were deducted in accordance with the CBA, which if interpreted in the manner pressed by Defendants would have authorized Defendants to hold Plaintiff accountable for shortages.  Defendants, however, cite no authority to support the argument that a provision in the CBA allowing certain conduct excuses an employer's failure to comply with the NJWPL.[9]

The Seventh Circuit Court of Appeals' decision in Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427 (7th Cir. 2010), provides

_____

9.  Moreover, Plaintiff's state-law claim cannot be preempted simply because Defendants rely on the CBA as a defense to such claim.  "It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives.  But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule - that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.  When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.  But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.  If a defendant could do so, the plaintiff would be master of nothing.  Congress has long since decided that federal defenses do not provide a basis for removal."  Caterpillar, 482 U.S. at 398-99.

guidance on the extent to which labor and management can agree through the collective bargaining process to waive individual rights provided in state law.  In Spoerle, the defendant required its employees to wear certain protective gear, and the union representing the employees agreed that the time employees spent putting on such gear is not compensable.  Id. at 428.  In exchange, union workers were paid a higher wage rate than the minimum wage law required.  Id.  The employees wanted to be compensated for the extra minutes spent each day putting on and taking off protective gear.  Id.  The FLSA generally requires workers to be paid for time spent putting on and taking off certain gear, but allows labor and management to vary this rule through collective bargaining.  Id.  Wisconsin law, however, requires payment for such time spent by employees, and does not allow parties to contract away this right through the collective bargaining process.  Id.

The Seventh Circuit considered whether the FLSA preempts the state statute, and concluded that state law was not preempted.  Although this issue is not particularly relevant to the present case, the rationale employed by the Court is instructive.  The Seventh Circuit specifically noted that "[n]othing that labor and management put in a collective bargaining agreement exempts them from state laws of general application."  Id. at 430.  "Management and labor acting jointly (through a CBA) have no more

29

power to override state substantive law than they have when
acting individually." Id.  The Seventh Circuit then utilized the
following example to demonstrate that parties through a CBA
cannot agree to override state law:

> Imagine a CBA saying: "Our drivers can travel
> at 85 mph, without regard to posted speed
> limits, so that they can deliver our goods in
> fewer compensable hours of work time."  That
> clause would be ineffectual.  And a CBA
> reading instead that "our drivers can travel
> at a reasonable rate of speed, no matter what
> state law provides" would be equally
> pointless.  Making a given CBA hard to
> interpret and apply (as the word "reasonable"
> would be) would not preempt state law on the
> theory that states must leave the
> interpretation of CBAs to the National Labor
> Relations Board and the federal judiciary;
> states would remain free to enforce laws that
> disregarded CBAs altogether.

Id.[10]

     The Wisconsin law at issue in Spoerle enumerates certain
types of activities for which employees must be paid.  The
employer attempted to withhold wages for one of the activities
for which it was required to pay its employees, justifying its
conduct by a provision in the collective bargaining agreement
which permitted non-payment for such activity.  These facts are
somewhat analogous to the present case, where the NJWPL sets
forth certain categories for which wages may be deducted, and

---

10.  The rationale of Spoerle was followed by the District of New
Jersey in O'Keefe v. Hess Corp., No. Civ. A. 10-2598, 2010 WL
3522088, at *6-7 (D.N.J. Sept. 1, 2010).

thereby prohibits wage deductions for categories not otherwise enumerated.  Defendants have withheld wages for a purpose not authorized by the statute, justifying their conduct by a provision in the collective bargaining agreement.  Just as the defendant in Spoerle could not rely on a CBA provision to withhold money from its employees in contravention of state law, here too Defendants cannot rely on a provision in the CBA allowing wage deductions for purposes not authorized by New Jersey state law.[11]

The Court notes that arguably Plaintiff's claim could be construed as a challenge to the legality of a term of the CBA.  If the CBA is interpreted to have authorized wage deductions to cover an employee's shortages, then it permitted withholding of wages for a purpose other than the those set forth in New Jersey law.  See Male v. Acme Markets, Inc., 110 N.J. Super. 9, 12 (N.J. Super. Ct. App. Div. 1970) (noting in dicta that "if the union

---

11.  Defendants would presumably argue that because the CBA is unclear, the NJWPL claim cannot be decided without interpretation of the CBA.  If the CBA clearly and explicitly stated that wages may be deducted to cover shortages, the claim could be resolved by the Court because resolution thereof would require reference to, but not interpretation of, the CBA.  Although the language in the CBA here is more ambiguous, this factor does not alter the preemption analysis given that the right arises independently of the CBA.  See Spoerle, 614 F.3d at 430 ("Making a given CBA hard to interpret and apply (as the word 'reasonable' would be) would not preempt state law on the theory that states must leave the interpretation of CBAs to the National Labor Relations Board and the federal judiciary; states would remain free to enforce laws that disregarded CBAs altogether.").

agreement authorized a deduction of shortages from wages, such a provision would contravene the law, would violate public policy and be invalid.").

Some courts have found that challenges to the legality of a provision in a CBA are preempted under the LMRA, where resolution of the claims required interpretation of the provision of the CBA at issue.  See, e.g., Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (Second Circuit concluded that plaintiff's challenge to lawfulness of term of CBA required interpretation of CBA and was thus preempted under Section 301); Medrano v. Excel Corp., 985 F.2d 230, 234 (5th Cir. 1993) (plaintiff's claim was preempted by Section 301 where he challenged legality of provision of CBA and his claim was deemed "substantially dependent upon the meaning of a term of the CBA and its applicability in this case."), cert. denied, 510 U.S. 822 (1993); Dunlap v. Fred Meyer Stores, Inc., Civ. A. No. 04-950, 2006 WL 2901841, at *7 (D. Or. Oct. 5, 2006) (where plaintiff contended that provision of CBA violated state law, court found that claim was preempted by Section 301 because "the Court cannot resolve Plaintiff's claim without construing the CBA.").  These cases, however, do not stand for the broad proposition that every claim challenging the legality of a provision in a CBA must be preempted under the LMRA.  Rather, these cases "stand simply for the unremarkable proposition that 'an application of state law is

pre-empted by § 301 of the [LMRA] only if such application requires the interpretation of a collective-bargaining agreement.'" Glatts v. Crozer-Keystone Health System, 645 F. Supp. 2d 446, 451 (E.D. Pa. 2009) (citing Lingle, 486 U.S. at 413).[12]

In this case, although Plaintiff could have alleged that a provision in the CBA allowing wage deductions for shortages violated New Jersey law,[13] he did not do so.  As the master of the complaint, Plaintiff may bring a state law claim even though he could have brought a similar suit under the CBA.  See Livadas v. Bradshaw, 512 U.S. 107, 123 (1994) (". . . § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . (and not whether a grievance arising from 'precisely the same set of facts' could be pursued . . .) that decides whether a state cause of action may go forward."); Caterpillar, 482 U.S. at 394-95 ("It is true that

---

12.  The broad proposition that every claim challenging the legality of a CBA provision is preempted by § 301 is inconsistent with the Supreme Court's statement in Allis-Chalmers that the "'full scope of the pre-emptive effect of federal labor-contract law' must be 'fleshed out on a case-by-case basis.'"  Id. (quoting Allis Chalmers, 471 U.S. at 220).

13.  The Court makes no finding as to whether Article 9 of the CBA should be interpreted to hold Plaintiff accountable for shortages and notes only that this is one possible interpretation of the contract.

respondents . . . possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so."); Voilas, 170 F.3d at 373-74 ("Thus, under Caterpillar, employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining contract."); Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 229 (3d Cir. 1995) ("[A] plaintiff may bring a state law tort action against an employer, even where he could have brought a similar claim based on a provision in his collective bargaining agreement, so long as the state claim does not require interpretation of the collective bargaining agreement.  The tort claim falls under state law even though the claim based on the bargaining agreement provision must apply federal law pursuant to section 301.").

Plaintiff chose not to frame his complaint in terms of an illegal CBA provision, but instead challenges the actions of his employer.  The right to be paid the wages earned, without deductions for unauthorized purposes, exists independently of the CBA and cannot be eviscerated by a collective bargaining agreement.  See Allis-Chalmers, 471 U.S. at 212 ("Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.  In

34

extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").   Therefore, resolution of the NJWPL claim, as set forth in the amended complaint, does not require application or interpretation of the CBA, and accordingly Plaintiff's NJWPL claim is not preempted under Section 301.

In so finding, the Court notes Defendants' reference to Antol v. Esposto, 100 F.3d 1111, 1121 (3d Cir. 1996), in which the Third Circuit held that the Pennsylvania Wage Law was completely preempted by the LMRA.   In Antol, the plaintiffs sued individual officers and stockholders of the defendant corporation.   Antol, 100 F.3d at 1119.   Under the Pennsylvania Wage Law, officers are the "employer" and are personally liable for obligations of the corporate employer.   Id.   Such definition is different from the definition of an "employer" under the LMRA and, if applied to the LMRA, would "substantially alter the scope and enforcement of the typical collective bargaining agreement." Id. at 1120.   The Third Circuit found that if the Pennsylvania Wage Law was construed to expand the definition of an employer in collective bargaining agreements so as to include corporate officers, there would be several adverse effects on federal labor law, including allowing employees to bypass the grievance

procedures of the collective bargaining agreement by suing corporate officers in state court.  Id.  In the interest of having a uniform labor policy, the Court found the Pennsylvania Wage Law preempted.  Id. at 1121.

The Third Circuit has not yet addressed New Jersey's Wage Payment Law in the context of Section 301 preemption, and Defendants do not argue that application of the NJWPL would be preempted for the same reasons set forth in Antol.[14]  Unlike Antol, this case does not present an issue of whether definitions within the NJWPL are inconsistent with the LMRA, thereby warranting preemption.  Because the Court finds, as set forth above, that resolution of Plaintiff's NJWPL claim in this case will not require application or interpretation of the CBA, the Court does not at this time find the claim preempted solely on the basis that it asserts a violation of the New Jersey Wage Payment Law.

### 5.  Plaintiff's RICO Claims

Defendants contend that Plaintiff's allegations of RICO violations are, in essence, allegations that Defendant Dietz & Watson failed to pay to Plaintiff the wages contractually agreed

---

14.  This issue appears to be one of first impression in this district, and the Court declines to find complete preemption of a state law without the benefit of the parties' arguments on this issue.  If Defendants intend to argue that the NJWPL is preempted under the LMRA, Defendants will have to address this issue by more than mere reference to the fact that the Third Circuit has found preemption of a Pennsylvania law.

upon in the CBA.  (Defs.' Br. 8-9.)  Defendants argue that the RICO claims are therefore preempted by federal law.  (Id.) Plaintiff responds that the factual predicate underlying his RICO claim is Defendants' alleged fraudulent deductions from Plaintiff's paycheck and Defendants' misrepresentation that such deductions were mandatory and permissible under state law. (Pl.'s Opp. Br. 7.)  Plaintiff asserts that the Court need not consult the CBA to resolve this claim.  (Id.)

Under 18 U.S.C. § 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."[15]  To assert a RICO claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Lum v. Bank of America, 361 F.3d 217, 223 (3d. Cir. 2004), cert. denied, 543 U.S. 918 (2004).

In Franks v. O'Connor Corp., No. Civ. A. 92-0947, 1992 WL 301266, at *1 (E.D. Pa. Oct. 16, 1992), the court considered

---

15.  Plaintiff does not specify which section of RICO was allegedly violated, but it appears from the allegations in the amended complaint that he asserts a violation of subsection (c) of the statute.  The Court also notes Plaintiff's reference to subsection (c) in his brief in opposition to the pending motion to dismiss.  (See Pl.'s Opp. Br. 12.)

whether the plaintiffs' RICO claims, which stemmed from alleged wage-skimming by the defendants, were preempted under Section 301 of the LMRA.  The court first adopted the following test for preemption or RICO claims: "[I]n order for § 301 to preempt a claim under RICO, . . . the underlying conduct which forms the predicate acts [must] be unlawful only by virtue of federal labor law." Id. at *3.  The court noted that the plaintiffs' allegations that the defendants committed mail and wire fraud were based on purported wage-skimming activities. Id. at *4. The court found such claims preempted because "[t]he only reason defendants' conduct can be alleged to be unlawful is that the defendant did not pay wages it had agreed to pay under the Collective Bargaining Agreement." Id.  The court explained that without the agreement, the employer could not be held liable for failure to pay the employees' wages, and therefore the conduct was unlawful only by virtue of federal labor law. Id.

In this case, Plaintiff's claims are likewise predicated on an alleged wage-skimming scheme.  However, here there are allegations that the wage-skimming scheme was unlawful not only because Defendants purportedly failed to pay wages under the CBA, but also because wages were skimmed in violation of the NJWPL, as well as the FLSA and the New Jersey Minimum Wage Act as discussed below.  Therefore, the alleged underlying conduct which forms the predicate acts is not unlawful only by virtue of federal labor

38

law and, accordingly, the RICO claims are not preempted by
Section 301.

That said, the Court finds that the RICO claims are subject
to dismissal without prejudice under Rule 12(b)(6) for failure to
state a claim.  As noted above, to state a RICO claim, a
plaintiff must allege a pattern of racketeering activity, which
"requires at least two predicate acts of racketeering."  Lum, 361
F.3d at 223 (citing 18 U.S.C. § 1961(5)).  These predicate acts
may include federal mail fraud, 18 U.S.C. § 1341, or federal wire
fraud, 18 U.S.C. § 1343.  Id.  Where a plaintiff relies on mail
and wire fraud as a basis for a RICO violation, he must plead the
allegations of fraud with specificity in accordance with Fed. R.
Civ. P. 9(b).  Id.  "Plaintiffs may satisfy this requirement by
pleading the 'date, place or time' of the fraud, or through
'alternative means of injecting precision and some measure of
substantiation into their allegations of fraud.'"  Id. at 224
(internal quotation omitted).  Additionally, plaintiffs must
allege "who made a misrepresentation to whom and the general
content of the misrepresentation."  Id. (citations omitted).

In this case, Plaintiff concedes that he fails to identify
the date, time, or place of any misrepresentations by Defendants
or which of the three defendants made misrepresentations to
Plaintiff, but he argues that the allegations in the amended
complaint provide an alternative means of injecting precision and

some measure of substantiation into the fraud allegations.
(Pl.'s Opp. Br. 13.)   The Court disagrees and finds that the
amended complaint lacks sufficient detail to support Plaintiff's
allegations of mail and wire fraud.

The amended complaint contains only a few paragraphs that
attempt to set forth with specificity the allegations of fraud.
These paragraphs state that in the spring of 2000 and in early
2007, Louisa Bergey told Plaintiff that his wages would be
deducted to cover shortages.   (Am. Compl. ¶¶ 16-18.)   Plaintiff
purportedly informed Ms. Bergey that he did not want these
deductions, but she responded that the deductions were mandatory.
(Id. at ¶¶ 19-20.)   These paragraphs, however, do not state that
Ms. Bergey acted at the direction of the defendants and do not
allege any knowledge or wrongdoing by the defendants themselves.
Even assuming that the defendants engaged in wrongdoing,
Plaintiff lumps all three defendants together as having engaged
in wrongful conduct without specifying which defendant was
responsible for which actions.   Such allegations are insufficient
to place Defendants on notice of the fraudulent conduct with
which they are charged.   Accordingly, the RICO claims fail to
state a claim and shall be dismissed without prejudice.

### 6.   Plaintiff's Minimum Wage Claims

Plaintiff asserts in Count IX violations of the FLSA and the
New Jersey Wage and Hour Law based upon the factual allegation

that he was paid only one penny for his final two pay weeks when
he worked at least 65 hours per week.  (Am. Compl. ¶¶ 103-04.)
Defendants argue that the FLSA claim is preempted by federal
labor law because such claim is based on the deduction of money
from Plaintiff's wages, which is purportedly permitted by the
CBA.  (Defs.' Br. 9.)  They further argue that the claim based
upon New Jersey's minimum wage law is preempted because the wages
owed Plaintiff are governed by the CBA.  (Id. at 9-10.)
Defendants cite Antol, supra, in support of their argument that
the state law claim is preempted.  (Id. at 10.)[16]

The FLSA confers upon Plaintiff statutory rights that are
independent of the CBA.  Specifically, the FLSA requires that
employees be paid a minimum wage and time and half for all hours
worked in excess of forty hours a week.  29 U.S.C. §§ 206, 207.
"Employees' rights to minimum wage and overtime pay under the
FLSA are separate and distinct from employees' contractual rights
arising out of an applicable collective bargaining agreement."
Gordon v. Kaleida Health, No. civ. A. 08-378, 2008 WL 5114217, at
*7 (W.D.N.Y. Nov. 25, 2008) (citations omitted); see also O'Keefe
v. Hess Corp., No. Civ. A. 10-2598, 2010 WL 3522088, at *5
(D.N.J. Sept. 1, 2010)(in deciding claim under NJWHL, court noted

---

16.  For the reasons stated previously, the Court at this time
does not find that the Third Circuit's holding in Antol with
respect to the Pennsylvania Wage Payment Law requires preemption
of New Jersey's wage statutes.

that the "only determination that must be made is whether the NJWHL, regardless of any language in the CBA, entitles Plaintiff to recover wages and overtime for his work activities. . . . If so, then Plaintiff would have a nonnegotiable right to compensation that would trump any contrary language in the CBA.").

Plaintiff alleges in the amended complaint that he was not paid minimum wage in accordance with the FLSA because he was paid one penny for at least 130 hours of work in 2009. This claim requires no interpretation of the CBA. The right alleged to have been violated has an independent statutory basis in Section 206 of the FLSA. In resolving the claim, a trier of fact must only consider the number of hours Plaintiff worked, the statutory minimum hourly rate that Plaintiff was entitled to be paid, and the amount that Plaintiff was actually paid. Plaintiff's claim, therefore, is not preempted by § 301 and the simple fact that a CBA exists does not void Plaintiff's rights under the FLSA.

In so finding, the Court again notes Defendants' position that wages were withheld pursuant to the provision in the CBA allowing for deductions to cover shortages. For the same reasons the Court concluded that Plaintiff's claims under the NJWPL in this case are not preempted by the LMRA, the Court similarly concludes that the right to be paid a minimum wage is an independent right created by federal and state law, and the

42

parties to a CBA cannot contract away such right by allowing wage deductions that would deprive an employee of wages that are less than the minimum wages set by statute.

Moreover, the Court notes Defendants' argument that Plaintiff was exempt from the minimum wage requirements of the FLSA because he was a driver who regularly sold and delivered Defendants' products.  (Def.'s Br. 17.)  Defendants rely on 29 CFR § 541.504(a) in support of their argument, noting that Plaintiff's primary duty was making sales because Plaintiff received sales commissions and purportedly "bore the burden of collections and risks of shortages and product returns."  (Id.)  Plaintiff argues that the affirmative defense raised by Defendants is not ripe for adjudication at the pleading stage because the Court must consider factual issues not yet developed in the record.  (Pl.'s Opp. Br. 18-19.)

29 CFR § 541.504(a) provides that "[d]rivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales."  The regulation sets forth a number of factors that may be considered in determining whether a driver has a "primary duty of making sales," which include: "comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; possession of a selling or solicitor's license when such license is required by law or

43

ordinances; presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; description of the employee's occupation in collective bargaining agreements; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and proportion of earnings directly attributable to sales."  29 CFR § 541.504(b).

The Court finds that resolution of the affirmative defense raised by Defendants is not appropriate on a motion to dismiss under Rule 12(b)(6).  The amended complaint states only that Plaintiff is a "driver" for Defendant Dietz & Watson and does not further articulate the scope of Plaintiff's duties.  The CBA defines Plaintiff as a "driver-salesman," and Plaintiff concedes that a "significant portion" of Plaintiff's wages were earned by commission.  (Pl.'s Opp. Br. 19.)  However, these are only two factors that may be considered in deciding whether Plaintiff's primary duty was to make sales.  The Court has no information concerning, for example, the duties of other employees engaged in either deliveries and/or sales, sales training provided to Plaintiff, Plaintiff's attendance at sales conferences, and arrangements concerning the amount of products to be delivered.  Additionally, it is not apparent from the face of the CBA whether

44

Plaintiff's primary duty was as a salesman.[17]   Therefore, a determination as to whether Plaintiff was primarily a salesperson subject to an exemption under the FLSA cannot be determined at this time.

The Court's analysis with respect to Plaintiff's claim under New Jersey's Minimum Wage Act, is identical to Plaintiff's claim under the FLSA.  Resolution of this claim will involve consideration of the number of hours Plaintiff worked, the statutory minimum hourly rate that Plaintiff was entitled to be paid, and the amount that Plaintiff was actually paid, and will not require a factfinder to consult or interpret the CBA to determine if the amounts due were paid.  Consequently, the Court finds that the claim under the New Jersey Minimum Wage Act is not preempted under Section 301.

_____

17.  For instance, the CBA sets forth a schedule for commissions based on the type of product delivered by a driver salesman, which supports the argument that driver salesmen's primary duty is sales.  The CBA also contains references, however, to a driver salesman's route.  A driver is not exempt from the minimum wage requirements if he "often calls on established customers day after day or week after week, delivering a quantity of the employer's products at each call when the sale was not significantly affected by solicitations of the customer by the delivering driver or the amount of the sale is determined by the volume of the customer's sales since the previous delivery."  29 CFR § 541.504(d)(2).  Moreover, the CBA refers to "Junior Salesmen" as a separate category of employees from "Driver Salesmen," which arguably support a finding that a driver salesman's primary duty is not sales.  A factual record must be developed to determine Plaintiff's primary duties.

### C.    Preemption under the NLRA

In Count X, Plaintiff alleges that he "complained to Defendant Dietz & Watson through its agents stating that he believed Defendants' conduct in withholding substantial wages from him <u>and</u> <u>other</u> <u>drivers</u> each pay period was illegal."  (Am. Compl. ¶ 108)(emphasis supplied.)  Plaintiff contends that Defendants terminated his employment in retaliation for Plaintiff's complaints.  (<u>Id.</u> at ¶ 113.)  Defendants assert that the retaliatory discharge claim is preempted by Sections 7 and 8 of the NLRA because the allegation concerns a purported concerted activity and thus must be decided by the National Labor Relations Board.[18]  (Defs.' Br. 11.)  Plaintiff responds that his claim is not based on whether he was retaliated against for engaging in concerted activity, but whether he was retaliated against for complaining about wage deductions.  (Pl.'s Opp. Br. 11.)

Section 7 of the NLRA gives employees the right to engage in concerted activities for the purposes of mutual aid and protection, 29 U.S.C. § 157, and Section 8 provides employees the right to be free from unfair labor practices, 29 U.S.C. § 158. When a plaintiff asserts a cause of action that implicates protected activity under Section 7 of the NLRA, or prohibited

---

18.  Defendants also argue that other claims are preempted under the NLRA without analysis as to why the conduct at issue concerns unfair labor practices.  As such, other than the retaliatory discharge claim, the Court does not address preemption of any other claims under the NLRA.

46

conduct under Section 8 of the NLRA, the cause of action is preempted under the principles of "Garmon preemption." San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244 (1959). The National Labor Relations Board has exclusive jurisdiction over such proceedings. Garmon, 359 U.S. at 245.

The issue presented in connection with Plaintiff's wrongful discharge claim is whether Plaintiff's alleged complaints to his employers concerning the purported wage deductions, which allegedly resulted in retaliation by termination of Plaintiff's employment, constituted "concerted activity" within the meaning of the NLRA. In the amended complaint, Plaintiff avers that he complained to his employer on behalf of himself and other drivers. (Am. Compl. ¶ 108.) Defendants contend that Plaintiff is alleging concerted activity on behalf of other drivers and, as such, the claim must be determined by the administrative procedures set forth in the NLRA. (Defs.' Br. 11-12.) Plaintiff argues that he does not allege concerted activity and consequently his claim requires only application of common and statutory law. (Pl.'s Opp. Br. 10-11.)

The NLRA is silent as to what conduct constitutes "concerted activity," but "it clearly enough embraces the activities of employees who have joined together in order to achieve common goals." NLRB v. City Disposal Systems, Inc., 465 U.S. 822, 830 (1984). "What is not self-evident from the language of the Act,

47

however . . . is the precise manner in which particular actions of an individual employee must be linked to the actions of fellow employees in order to permit it to be said that the individual is engaged in concerted activity." Id. at 830-31.

The Supreme Court addressed this issue in City Disposal Systems, where an employee truck driver was terminated from his employment because he refused to drive a truck he believed was unsafe due to faulty brakes. 465 U.S. at 827. The Supreme Court, in reviewing the decision of the NLRB, concluded that the NLRA protects individual employees who invoke rights contained in a CBA because their activity is a direct extension of the collective bargaining process. Id. at 832. The Supreme Court noted that "an employee could not invoke a right grounded in a collective-bargaining agreement were it not for the prior negotiating activities of his fellow employees" and that when an employee "invokes a right grounded in the collective-bargaining agreement, he does not stand alone." Id. The Supreme Court concluded that an individual employee who reasonably and honestly invokes a right provided for in his collective bargaining agreement has undertaken concerted activity for mutual aid or protection. Id. at 832, 841.

Here, if the CBA is interpreted to provide authority for the deduction of wages to cover shortages, then this case presents the converse of the situation in City Disposal Systems:

48

Plaintiff's claim for wrongful discharge would be based on a challenge to a provision in the CBA rather than an attempt to vindicate the rights guaranteed by the CBA.  In challenging a term of the CBA, Plaintiff would be undermining the very purpose of the NLRA.  See City Disposal Systems, 465 U.S. at 833-34 (purpose of NLRA is to encourage collective bargaining).  Indeed, "protecting employees whose demands are different than what their union negotiators agreed to, is not a natural extension of concerted action; it is a repudiation of the union's right to be the exclusive negotiator with the employer and wholly undermines the collective bargaining process."  Bd. of Educ. of Schaumburg Comm. Consol. Sch. Dist. 54 v. Illinois Educ. Labor Relations Bd., 247 Ill. App. 3d 439, 458 (Ill. App. Ct. 1993), appeal denied by 152 Ill. 2d 554 (Ill. 1993).  It follows that Plaintiff's complaint about the wage deductions, if his union representative had agreed to such term in the CBA, would not be an extension of the collective bargaining process and thus would not be considered concerted action undertaken for mutual aid or protection.

Moreover, if the CBA is not interpreted to provide authority for the wage deductions, then Plaintiff's complaints cannot be construed as a challenge to the terms of a CBA.  Rather, Plaintiff's conduct would appear to be based on a "purely personal" gripe, which would not be protected under Sections 7 or

49

8 of the NLRA.  See City Disposal Systems, 465 U.S. at 833 n.10.
Although the complaint alleges that Plaintiff told Defendants he
believed the withholding of his wages and the wages of other
drivers was illegal, Plaintiff does not allege that he actually
complained on behalf of anyone other than himself.  Nor is there
any assertion that other employees authorized Plaintiff to
complain on their behalf, or were aware of and supported
Plaintiff's complaint.  An individual's action, even if
presumably of interest to other employees, is not in itself
"concerted activity" under the NLRB.  Williams v. Watkins Motor
Lones, Inc., 310 F.3d 1070, 1072 (8th Cir. 2002).  Because the
Court finds that under either interpretation of the CBA,[19]
Plaintiff's amended complaint does not assert "concerted
activity," and the wrongful discharge claim is therefore not
preempted under Garmon.

Finally, to the extent Defendants contend that the wrongful
termination claim is preempted under Section 301 of the LMRA, the
Court finds that the claim is not preempted.  In Lingle, the
Supreme Court held that a state tort action arising out of the
retaliatory discharge of an employee covered by a collective
bargaining agreement is not preempted by Section 301 if the
application of state law does not require an interpretation of

---

19.  In deciding whether Garmon preempts the wrongful termination
claim, the Court need not interpret the CBA because the same
result is reached regardless of the interpretation of the CBA.

the CBA.  See Lingle, 486 U.S. at 407.  In this case, under New
Jersey common law, an employee has a claim for wrongful discharge
if his employment is terminated in violation of a "'clear mandate
of public policy.'"  Ballinger v. Delaware River Port Auth., 172
N.J. 586, 604 (N.J. 2002)(citing Pierce v. Ortho Pharma. Corp.,
84 N.J. 58 (N.J. 1980)).  Resolution of this claim will involve
the conduct of the Plaintiff and the conduct and motivation of
Defendants.  These elements do not require a court to interpret
any term of the CBA.  Nor is there a termination/discharge
provision in the CBA that must be considered in deciding the
claim.  Thus, the state-law remedy in this case in independent of
the CBA for Section 301 preemption purposes.  See Lingle, 486
U.S. at 407.

     D. **Leave to Amend**

     Federal Rule of Civil Procedure 15(a) directs the Court to
"freely give leave when justice so requires."  Under this
standard, courts will grant a party leave to amend unless the
opposing party can establish prejudice, undue delay, bad faith on
the part of the movant or futility of amendment.  There has been
no such showing here, except for Plaintiff's claims for
conversion (Count VII) and breach of fiduciary duty based on
Defendants' failure to pay wages (Count VI).  Plaintiff will be
granted leave to amend his complaint with respect to Counts I,
II, III, IV, V, and VI insofar as Plaintiff alleges that

                                  51

Defendants as escrow agents breached a fiduciary duty.

## IV.  CONCLUSION

For the reasons expressed above, Defendants' motion to dismiss will be granted in part and denied in part.  Plaintiff's claims set forth in Counts I, II, III, IV, and V of the amended complaint will be dismissed without prejudice, as will Plaintiff's claim in Count VI that Defendants as escrow agents breached a fiduciary duty.  Plaintiff's claims for conversion as set forth in Count VII and breach of fiduciary duty based on Defendants' failure to pay wages as set forth in Count VI will be dismissed with prejudice.  Plaintiff's claims in Count VIII, IX and X shall proceed.  An Order consistent with this Opinion will be entered.  Plaintiff shall be granted leave to file a second amended complaint within twenty days of entry of the Order accompanying this Opinion.


Dated: December 22, 2011          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.