UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RICHARD SNYDER, | : |
| Plaintiff, | : Civ. A. No. 11-0003 (NLH)(AMD) |
| v. | : |
| DIETZ & WATSON, INC., et al., | : OPINION |
| Defendants. | : |

**APPEARANCES:**

Justin L. Swidler, Esq.
Joshua S. Boyette, Esq.
Swartz Swidler, LLC
1878 Marlton Pike East
Suite 10
Cherry Hill, NJ 08003

    *Counsel for plaintiff*

Alan C. Milstein, Esq.
Jeffrey P. Resnick, Esq.
Sherman, Silverstein, Kohl, Rose & Podolsky, PC
East Gate Corporate Center
308 Harper Drive
Suite 200
Moorestown, NJ 08057

Claude Schoenberg, Esq.
Schoenberg Law Offices
2 Bala Plaza, Suite 300
Bala Cynwyd, PA 19004

    *Counsel for defendants*

**HILLMAN, District Judge**

    In this putative class action, plaintiff, Richard Snyder, a former delivery driver for defendant Dietz & Watson, claims that Dietz & Watson, and its president and vice president, also

defendants, violated the Racketeer Influenced Corrupt Organizations Act ("RICO") and the New Jersey Wage Payment Law ("NJWPL") by misrepresenting that deductions from drivers' paychecks to account for shortages were lawful and placed in an escrow account, when instead such withholdings were unlawful and used by defendants for their own benefit.[1]  Presently before the Court is defendants' motion for judgment on the pleadings with respect to plaintiff's RICO claims.[2]  Also pending before the Court is plaintiff's motion to certify a class for his RICO and NJWPL claims.  For the reasons that follow, defendants' motion for judgment on the pleadings will be denied, and plaintiff's motion for class certification will be denied without prejudice.

## I. JURISDICTION

Plaintiff sets forth claims derived from both federal and New Jersey law.  The Court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's related state law

---

[1] In claims separate from the putative class action, plaintiff also asserts that defendants retaliated against him by terminating his employment when he complained of the alleged wage violations, and by not paying him proper pay for the last two weeks he worked, along with reimbursement for sick and vacation time. The motions presently before the Court do not concern plaintiff's individual claims.

[2] Defendants previously moved to dismiss plaintiff's complaint, which the Court granted in part and denied in part.  With regard to plaintiff's RICO claims, the Court dismissed those claims, but granted plaintiff leave to file an amended complaint.  Plaintiff did so, and he also filed a RICO case information statement.

claims pursuant to 28 U.S.C. § 1367.

## II. BACKGROUND

Plaintiff contends that in the spring of 2000, when he was first given a permanent driving route, a Dietz & Watson employee, Louisa Bergey, told him that a certain amount of money would be deducted from his paycheck and placed in an escrow account in order to cover any shortages in the money collected from customers. Plaintiff claims he was advised that once any shortages were paid to defendants, the remaining funds would be returned to him. In February 2005, this policy was included in the collective bargaining agreement defendants entered into with the drivers' union, the Food Driver Salesmen, Dairy & Ice Cream Workers, Local No. 463 Union.

Plaintiff claims that in 2007, he was advised via telephone by Ms. Bergey that she would begin to prospectively deduct $75 per pay period because he did not have sufficient funds in his escrow account. Plaintiff claims that he objected, but was told that it was mandatory. This $75 deduction was marked on each of his paychecks as going to "Drivers Escro."

Plaintiff claims that not only were defendants' deductions unlawful, defendants (1) knew they were unlawful, (2) knowingly misrepresented the propriety of taking the deductions, (3) never put the money in escrow and instead used the money for themselves, and (4) perpetrated this scheme on many other

3

drivers. These actions, plaintiff claims, violate RICO and NJWPL, and such claims should be vindicated through a class action.

Defendants have moved for judgment on the pleadings on plaintiff's RICO claims, arguing that they are preempted by the National Labor Relations Act ("NLRA") and cannot be maintained because of plaintiff's separate count for a NJWPL violation. Defendants have also opposed plaintiff's request to certify a class on his RICO and NJWPL claims.

**III. DISCUSSION**

    **A.   Defendants' motion for judgment on the pleadings**

        **1.   Standard**

A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. Fed. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6). Turbe, 938 F.2d at 428. Thus, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

        **2.   Analysis**

Defendants have moved for judgment in their favor on plaintiff's RICO claims.

> The RICO statute provides,
>
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  It is also unlawful for anyone to conspire to violate § 1962(c).  See 18 U.S.C. § 1962(d).

In order to adequately plead a violation of RICO, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and a pattern of racketeering activity requires at least two predicate acts of racketeering.  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985); 18 U.S.C. § 1961(5)).  These predicate acts of racketeering may include, *inter alia*, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343.  See 18 U.S.C. § 1961(1).  The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud.  See 18 U.S.C. §§ 1341, 1343.  "'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.'"  Lum, 361 F.3d at 223 (citation omitted).

5

Defendants argue that plaintiff's RICO claims are unsupportable because the CBA contains a provision allowing for the deductions, and claims for unfair labor practices under a CBA are exclusively the domain of the NLRA, are for the National Labor Relations Board ("NLRB") to decide, and cannot serve as the predicate acts for a RICO claim.  Defendants also argue that because plaintiff claims that the deductions violate the NJWPL, and the NJWPL has its own administrative scheme to remedy wage violations, plaintiff cannot maintain a RICO claim.  Defendants further argue that the NJWPL violation allegations cannot serve as a predicate act for RICO because a NJWPL violation constitutes a disorderly persons offense, which is not considered a crime.

Defendants' positions could have merit if plaintiff's RICO claims were pleaded as defendants interpret them.  With regard to defendants' NLRA argument, it is true that the "Supreme Court has consistently emphasized the primacy of the NLRB in resolving unfair labor practice disputes." U.S. v. Boffa, 688 F.2d 919, 929 (3d Cir. 1982).  Thus, if it must be determined whether the object of a scheme constitutes an unfair labor practice, such a determination would have to be made through the "exclusive authority of the NLRB to decide whether conduct of employers or employees constitutes an unfair labor practice." Boffa, 688 F.2d at 929.  Consequently, an alleged violation of a right afforded by the NLRA, such as the duty to bargain collectively, cannot

6

constitute a crime under the mail fraud statute.  Id. at 930.

Conversely, an allegation that an employer deprived an employee of an economic benefit, such as wages and seniority, can constitute a crime under the mail fraud statute.  Id.  This is because a contract between employer and employee, and not the NLRA, is the source of those benefits, and "[a]lthough they may have been obtained as a result of employees' exercise of rights guaranteed by . . . the NLRA, these benefits are contractual, not statutory, in nature."  Id.

In this case, plaintiff does not allege that defendants bargained unfairly in creating the CBA with the deductions provision, or even that defendants' conduct constitutes unfair labor practices in violation of the NLRA.  If he did, such claims would most likely fail to serve as predicate acts under RICO.  Instead, in his RICO claims, plaintiff alleges that defendants committed fraud through the mail and wires, in violation of 18 U.S.C. §§ 1341 and 1343, when they (1) mailed and wired every paycheck to him that contained the deductions, and (2) telephoned him to tell him about the deductions, which defendants misrepresented they were entitled to take, and which defendants used for themselves rather than depositing in an escrow account.  Like Boffa explains, plaintiff's right to his earnings is an economic benefit conferred to him by virtue of his employment with defendants, and the scheme to defraud him of that benefit

7

through the mail and wire can constitute predicate acts to support a RICO claim. Simply because plaintiff could possibly bring claims under the NLRA regarding defendants' actions[3] does not mean that he is precluded from bringing claims under another statute for those same actions.[4] See Boffa, 688 F.2d at 931 ("[W]e decline to accept the proposition that the NLRA precludes the enforcement of a federal statute that independently proscribes that conduct as well.").

Similarly, with regard to defendants' arguments that plaintiff's NJWPL claims preclude his RICO claims, the fact that defendants' alleged conduct could constitute violations of NJWPL does not preclude plaintiff's RICO claims. Putting aside issues implicating the Supremacy Clause, which instructs that a state law cannot be interpreted to override conflicting federal law, see Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)

---

[3] Purportedly the CBA contains a provision allowing defendants to withhold some of its drivers' pay for shortages. Thus, read literally, defendants' conduct does not violate the CBA since the CBA permits such conduct. Because the alleged conduct does not violate the CBA, and plaintiff is not challenging the fairness of the CBA, it could be said that the NLRA is not implicated in this matter and is raised by defendant simply as a red herring. Of course, any unfair practices in the creation of the CBA would be a separate issue.

[4] Plaintiff alleges that the paycheck deductions policy was in effect since the spring of 2000, and the CBA containing this provision was not created until February 2005. Setting aside statute of limitation issues, five years of the alleged mail and wire fraud precede the CBA and therefore the possible preemptive application of the NLRA.

(citing U.S. Const. art. VI, cl. 2), plaintiff does not allege that defendants' purported violations of NJWPL serve as the predicate act for his RICO claims. As such, plaintiff's maintenance of a RICO claim based on allegations of mail and wire fraud is not inconsistent with a separate claim for NJWPL violations. Plaintiff's remedies and available damages under RICO and NJWPL are different, compare 18 U.S.C. § 1964(c) with N.J.S.A. 34:11-56a25, but that does not preclude either claim.

Consequently, plaintiff's RICO claims may proceed past the pleading stage.

**B. Plaintiff's motion to certify a class action**

Rule 23 of the Federal Rules of Civil Procedure allows a class action if certain requirements are met. First, the class must meet the "prerequisites" of Rule 23(a): numerosity, commonality, typicality, and adequacy. Second, the class must fit one of the Rule 23(b) types of classes. Where, as here, a plaintiff seeks certification under Rule 23(b)(3), it requires (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known as predominance and superiority, and plaintiff bears the burden of establishing each element of Rule 23 by a preponderance

9

of the evidence.  Behrend v. Comcast Corp., 655 F.3d 182, 190 (3d Cir. 2011).

According to plaintiff's complaint, he seeks to certify a class on his RICO and NJWPL claims on behalf of himself and those similarly situated, who "consist of all current and former drivers of Defendants who were residents of New Jersey and were subjected to Defendant's Wage Deduction and Escrow Account Policies."[5]  (Amend. Compl. ¶ 90, Docket No. 18 at 13.)  Plaintiff argues that even though discovery is still ongoing, he has enough evidence at this time to support all the elements of Rule 23(a) and (b)(3).  Defendants have opposed plaintiff's motion, arguing that plaintiff cannot meet those elements.

The Court finds that resolving the issue of class certification is premature at this time.  At first blush, plaintiff's proposed class of at least 49 drivers who were all subject to, and affected by, the same improper wage deduction policy over the course of four years appears to be a perfect candidate for certification as a class action.  As defendants point out, however, a closer look at the proposed class shows some flaws.  For example, even though plaintiff suggests that the class would consist of at least 49 drivers, it is unclear whether all of those drivers were subject to the deduction policy or had

---

[5] Plaintiff further clarifies that the time period for his class concerns all employees employed by defendants for the four years prior to the filing of plaintiff's complaint.

10

deductions taken out of their paychecks. Additionally, it is unclear how many of the proposed class members are residents of New Jersey.[6]

With the threshold issue of numerosity still unclear, the Court will refrain from considering the other elements. As discovery continues and the record expands, plaintiff may then be in a better position to meet his burden of demonstrating the propriety of having his case proceed as a class action.

**IV. CONCLUSION**

For the reasons expressed above, defendants' motion for judgment on the pleadings on plaintiff's RICO claims is denied, and plaintiff's motion for class certification is denied without prejudice to plaintiff's right to refile his motion at a later time. An appropriate Order will be entered.

Date: January 30, 2013         s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[6]Defendants argue that because some drivers live in New Jersey but have Pennsylvania or Delaware driving routes, those drivers would not be part of plaintiff's proposed class of drivers who live in New Jersey. The Court does not opine on that issue now, other than to note that the NJWPL may still apply to those drivers, and, regardless of that issue, plaintiff's RICO claims are not dependent on state law.